HONORABLE MARSHA J. PECHMAN

**UNITED STATES DISTRICT COURT OF WASHINGTON**

**WESTERN DISTRICT OF WASHINGTON**

**SEATTLE COURTHOUSE**

| | |
|---|---|
| **QUALITY PRODUCTS, INC.**, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>**VERKA FOOD PRODUCTS LTD.**, a Canadian company; **GAGANDEEP SINGH MATTA**, an individual, **VERKA FOOD INTERNATIONAL LTD.**, a Canadian company; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. 2:17-cv-01418- MJP<br><br>**PLAINTIFF QUALITY PRODUCTS' MOTION TO COMPEL OUTSTANDING FINANCIAL DISCOVERY**<br><br>Note on Motion Calendar:<br>February 8, 2019 |

## I.   INTRODUCTION

For over a decade and a half, Plaintiff Quality Products, Inc. ("Quality Products") has manufactured and distributed dairy and food products bearing the name "Verka" in South Asian grocery stores throughout the United States. In the operation of its business, Quality Products has built a reputation among the Indian and Middle Eastern markets that make up its customer base.

Recognizing Quality Products' strong brand recognition, Defendants Gagandeep Singh Matta ("Matta") and Verka Food Products, Ltd. ("VFP") began using the Verka trademark in the United States as early as 2010. After Plaintiff was forced to file a trademark action against Matta and VFP, the parties reached a short-lived resolution in 2012. However, Defendants never paid the settlement amount agreed upon by the parties, and Matta ultimately formed Verka Food International, Ltd. ("VFI") in order to continue to sell goods bearing Plaintiff's Verka trademarks. To prevent Matta, VFP, and VFI (together, "Defendants") from continuing to pass off kitchen and food-related products as goods associated with Quality Products' business, Plaintiff filed the instant action for breach of the parties' settlement agreement and for trademark infringement.

In order to support their trademark infringement claim, the law grants Plaintiff the right to discover the amount of profits and revenues that Defendants have generated as a result of their infringing use of the Verka trademarks. This investigation into Defendants' profits is essential to calculating and proving damages. In discovery, Defendants have produced a very limited number of summary reports that provide only a high-level overview of VFI's financial activities and are often duplicative.

On December 19, 2018, Plaintiff met and conferred with Defendant regarding, *inter alia*, the discovery sought in the instant motion: Request for Production ("RFP") Set Three, Nos. 47-51 to VFI and RFP Set Three, Nos. 13-17 to VFP (the "Outstanding Financial Discovery"). As the Court's Order Denying Plaintiff's Motion to Compel (Dkt. No. 69) appeared to apply to the discovery requests raised in Plaintiff's November 13, 2018 Motion to Compel (Dkt. No. 62), Plaintiff limited its argument to that subset of discovery in its LCR 37 submission.

The financial discovery sought by Plaintiff in the LCR 37 submission is broad enough to encompass the Outstanding Financial Discovery, including VFI and VFP's QuickBooks backup file, cost of goods sold transaction reports, sales by customer detail reports, current accounts receivable aging reports, and audited financial statements. However, Defendants have taken the position that because the financial discovery sought in Plaintiff's LCR 37 Joint Submission does not specifically

ask for each of the QuickBooks reports or audited financial statements <u>by name</u>, Defendants have refused to produce these documents. This refusal has required the filing of this separate motion regarding Outstanding Financial Discovery.[1]

The documents provided by Defendants do not contain the type of detail that will permit Plaintiff to demonstrate the amount of Defendants' profits and defend against Defendants' claims that any proportion of those profits is not attributable to trademark infringement. Moreover, Defendants have represented in depositions that they are in possession of the financials that Plaintiff has requested, but to this date have refused to produce on various grounds. In light of Plaintiff's burden to substantiate its damages, Plaintiff is entitled to Defendants' audited financial statements and QuickBooks accounting records, and the motion to compel these financial records should be granted.

## II.     BACKGROUND

### A.     The Discovery at Issue and the Meet and Confer Process

On December 21, 2017, Plaintiff first served requests for discovery seeking information regarding Defendants' profits and revenues. Declaration of Drei Munar ("Munar Decl.") ¶ 3. This financial discovery, in addition to several other categories of documents, is the subject of Plaintiff's LCR 37 Joint Submission dated January 18, 2019. On September 28, 2018, Matta testified that in order to independently verify whether the books and records in VFI's QuickBooks are accurate, the company retains an outside accounting firm to audit the records and prepare audited financial statements, which VFI has maintained for the past five to seven years. Munar Decl. ¶ 7, Exhibit D (p. 230:2-234:25).

In light of the information obtained at Matta's deposition, Plaintiff determined that there were in-depth financial records – in addition to the summary reports – that were not produced by

---

[1] Plaintiff was unable to reach an impasse with Defendants regarding the Outstanding Financial Discovery until on or about January 9, 2019 – the parties' final meet and confer. Because compliance with the expedited joint motion procedure required Plaintiff to submit its portion of any discovery submission to Defendants by January 7, Plaintiff prepared the instant motion to compel pursuant to LCR 7(d)(3).

Defendants and likely to exist. Plaintiff was advised by its expert witness that the detailed information contained in VFI and VFP's financial records (including its QuickBooks backup file, cost of goods sold transaction reports, sales by customer detail reports, current accounts receivable aging reports, and audited financial statements) would be helpful in conducting a damages analysis based on the profits unlawfully earned by Defendants. Declaration of Micah Pilgrim ("Pilgrim Decl.") ¶ 7. Accordingly, on November 15, 2018, Plaintiff served its third set of discovery, which sought this comprehensive financial information. Munar Decl. ¶ 4.

On December 19, 2018, Plaintiff's counsel met and conferred over the phone with Defendants' counsel, who requested to speak with his clients and follow up regarding the documents that they would produce in response to the Outstanding Financial Discovery. Munar Decl. ¶ 5. On January 7, 2019, Plaintiff's counsel requested another call to meet and confer. Following the exchange of correspondence regarding the outstanding discovery, the parties held a telephonic conference on January 9, 2019. Munar Decl. ¶ 6, Exhibit B, C. Ultimately, the parties reached an impasse regarding the production of VFI and VFP's QuickBooks backup file, cost of goods sold transaction reports, sales by customer detail reports, current accounts receivable aging reports, and audited financial statements.

With regard to the QuickBooks backup file and audited financial statements, Defendants' counsel objected to production on the basis of overbreadth and claimed that the financial information sought was already contained in other documents requested by Plaintiff. Defendants' counsel further objected that the documents were irrelevant. To the extent that Plaintiff's expert has requested the QuickBooks backup file and audited financial statements in order to determine damages, Plaintiff is entitled to this information. Defendants' counsel appears to substitute his own judgment in determining what Plaintiff requires to prove damages, but he has established no basis to determine what is and is not relevant to the opposing side's damages analysis in expert discovery.

With regard to the cost of goods sold transaction reports, Defendants allege that there is no such report available. However, during his deposition, Matta testified that cost of goods sold

information could be determined from the QuickBooks data. Munar Decl. ¶ 7, Exhibit D (p. 193:2-5). Defendants have an outside accountant who would be able to generate this report, which provides a breakdown of a standard accounting category that is crucial to proving damages with reasonable certainty. As to the sales by customer detail reports and current accounts receivable aging reports, Defendants produced a limited number of documents for VFI, but have failed to confirm whether they have produced all of the documents for VFI or whether they will produce any documents for VFP.

### III. STANDARD

#### A. Plaintiff's Damages Are Measured as the Amount of Defendants' Profits

Pursuant to Section 1117(a) of the Lanham Act, a plaintiff is entitled to recover defendant's profits, any damages sustained by the plaintiff, and the costs of the action. 15 U.S.C. § 1117(a). The purpose of Section 1117(a) is to take away any incentives for would-be infringers and to prevent the infringer from unjustly benefitting from the wrongful act. *See Polar Bear Prods., Inc. v. Timex Corp*., 384 F.3d 700, 708 (9th Cir. 2004); *Intel Corp. v. Terabyte Int'l, Inc*., 6 F.3d 614, 621 (9th Cir. 1993) (citations omitted). In seeking to achieve equity between the parties, the court must fashion a remedy wherein the defendant may not retain the fruits of unauthorized trademark use or continue that use. *Nat'l Prod., Inc. v. Arkon Res., Inc*., 294 F. Supp. 3d 1042, 1061 (W.D. Wash. 2018).

"To establish damages under the lost profits method, a plaintiff must make a prima facie showing of reasonably forecast profits." *Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1408 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar Power Co*., 839 F.3d 1179 (9th Cir. 2016) (quotation omitted). "Plaintiff has only the burden of establishing the defendant's gross profits from the infringing activity with reasonable certainty. Once the plaintiff demonstrates gross profits, they are presumed to be the result of the infringing activity." *Id.* (citing *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co*., 316 U.S. 203, 206-07 (1942)); *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 944 F.Supp.2d 830, 839 (C.D. Cal. 2012). "The defendant

thereafter bears the burden of showing which, if any, of its total sales are not attributable to the infringing activity, and additionally any permissible deductions for overhead." *Lindy Pen Co.*, 982 F.2d at 1408 (citing 15 U.S.C. § 1117(a)).

There are two situations under which a plaintiff will recover a damages award in the amount of an infringing defendant's profits: (1) on a proxy theory as a measure of the plaintiff's own damages; or (2) on a theory of disgorgement of the defendant's profits. *Id.* at 1407. Under the proxy theory, the court calculates damages based on defendants' profits to compensate plaintiff for sales it lost as a result of those sales being diverted to the infringer. Under the disgorgement theory, the court will divest defendants of any profits that were generated from its willfully infringing use, in order to prevent unjust enrichment and deter any further infringement. *See Spin Master*, 944 F. Supp. 2d at 846.

While Plaintiff is not required to calculate damages with "absolute exactness," there must be a reasonable basis for its calculation of damages. *See Lindy Pen Co.*, 982 F.2d at 1407. In *Lindy Pen*, the plaintiff pen company registered a trademark for the word "Auditor's" in order to market a type of ball point pen with a fine-tip for use by accountants. Before the trademark was perfected and registration issued, a competing pen company began using the mark "Auditor's" on its pen barrels. *Id.* at 1403. The court determined that there was a likelihood of confusion for sales that were made over the telephone. *Id.* at 1404. On the issue of damages, the court denied plaintiff's monetary award, because plaintiff relied on defendant's total pen sales and did not subdivide its data into the category of sales generated in the telephone order market. *Id.* at 1408.

Here, Plaintiff is entitled to all of the information necessary to meet its burden of proving reasonably certain lost profits associated with infringement. In producing only summary reports incapable of any subdivision and bereft of any transaction-level detail, Defendants are preventing Plaintiff from discovering information that will allow it to establish a reasonably certain calculation of Defendants' lost profits. As explained below, Plaintiff must be permitted to examine Defendants' financial records, including the companies' QuickBooks backup file, cost of goods sold transaction

reports, sales by customer detail reports, current accounts receivable aging reports, and audited financial statements.

### B. Defendants' Financial Records Are Necessary to Calculate Their Profits

#### 1. The QuickBooks Backup File for VFI and VFP

<u>RFP SET ONE NO. 47 TO VFI AND NO. 13 TO VFP</u>: YOUR QUICKBOOKS backup file from January 1, 2016 to the present.

<u>RESPONSE</u>: In addition to and without waiving the foregoing General Objections, [VFI AND VFP] further object[] on the grounds that this Request is overly broad in scope in that this Request apparently seeks [VFI AND VFP]'s entire QuickBooks backup file, and is in no way limited to products or information relevant to this litigation. [VFI AND VFP] further object[] to this Request on the grounds that the burden and expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the parties' resources, the importance of issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. [VFI AND VFP] further object[] to this Request on the grounds that it seeks production of documents containing information duplicated in QP's other Requests for Production. [VFI AND VFP] further object[] on the grounds that QP has now served a total of 111 Requests for Production on Defendants in this litigation, which have subjected Defendants, including [VFI AND VFP], to oppression, harassment, and undue burden. [VFI AND VFP] further object[] to this Request to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, spousal privilege, marital privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, [VFI AND VFP] answer[] as follows: [VFI AND VFP are] available to meet and confer with Plaintiff regarding a reasonable and relevant scope for this Request.

The QuickBooks backup file includes VFI and VFP's detailed accounting records and contains a full version of the businesses' financial data. Pilgrim Decl. ¶ 9. The summary reports produced by Defendants in this matter are based on the particularized data contained in these backup documents. Without the underlying information, the summary reports provide only a surface-level glimpse at Defendants' revenues and sales, and not the level of detail required to calculate the correct

amounts of damages.

Throughout the meet and confer process, Defendants have claimed that their revenues also include sales to Canada and that these sales cannot provide the basis for any damages. Given Defendants' own representations, they must provide the entire backup file for their financial documents, which is essential to conducting a full analysis of which sales can reasonably be attributed to infringement.

While Defendants object that the information they have produced is sufficient to calculate damages, they do not have the knowledge necessary to reach this determination, particularly because it contradicts advice obtained from Plaintiff's expert witness on damages. Without the necessary accounting expertise, Defendants cannot unilaterally decide that these documents are irrelevant. The QuickBooks backup file will provide information that can be cross-checked against Defendants' audited financials to determine a complete picture of Defendants' profits. They are clearly relevant and should be produced.

### 2. *The QuickBooks Financial Reports for VFI and VFP*

> RFP SET ONE NO. 48 TO VFI AND NO. 14 TO VFP: YOUR QUICKBOOKS sales by customer detail report from January 1, 2016 to the present.
>
> RESPONSE: In addition to and without waiving the foregoing General Objections, [VFI and VFP] further object[] on the grounds that this Request is overly broad in scope in that this Request seeks information about all of [VFI and VFP]'s customers, and is in no way limited to products or information relevant to this litigation. [VFI and VFP] further object[] to this Request on the grounds that the burden and expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the parties' resources, the importance of issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. [VFI and VFP] further object[] to this Request on the grounds that it seeks production of documents containing information duplicated in QP's other Requests for Production. [VFI and VFP] further object[] on the grounds that QP has now served a total of 111 Requests for Production on Defendants in this litigation, which have subjected Defendants, including [VFI and VFP], to oppression, harassment, and undue burden. [VFI and VFP] further object[] to this Request to the extent it seeks information

protected from discovery by the attorney-client privilege, the attorney work product doctrine, spousal privilege, marital privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, [VFI and VFP] answer[] as follows: [VFI and VFP are] available to meet and confer with Plaintiff regarding a reasonable and relevant scope for this Request.

RFP SET ONE NO. 49 TO VFI AND NO. 15 TO VFP: YOUR QUICKBOOKS cost of goods sold transaction report from January 1, 2016 to the present.

RESPONSE: In addition to and without waiving the foregoing General Objections, [VFI and VFP] further object[] on the grounds that this Request is overly broad in scope in that this Request seeks information about all of [VFI and VFP]'s costs of goods sold and transactions, and is in no way limited to products or information relevant to this litigation. [VFI and VFP] further object[] to this Request on the grounds that the burden and expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the parties' resources, the importance of issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. [VFI and VFP] further object[] to this Request on the grounds that it seeks production of documents containing information duplicated in QP's other Requests for Production. [VFI and VFP] further object[] on the grounds that QP has now served a total of 111 Requests for Production on Defendants in this litigation, which have subjected Defendants, including [VFI and VFP], to oppression, harassment, and undue burden. [VFI and VFP] further object[] to this Request to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, spousal privilege, marital privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, [VFI and VFP] answer[] as follows: [VFI and VFP are] available to meet and confer with Plaintiff regarding a reasonable and relevant scope for this Request.

RFP SET ONE NO. 50 TO VFI AND NO. 16 TO VFP: YOUR QUICKBOOKS current accounts receivable aging report from January 1, 2016 to the present.

RESPONSE: In addition to and without waiving the foregoing General Objections, [VFI and VFP] further object[] on the grounds that this Request is overly broad in scope in that this Request seeks

information about all of [VFI and VFP]'s accounts receivable, and is in no way limited to products or information relevant to this litigation. [VFI and VFP] further object[] to this Request on the grounds that the burden and expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the parties' resources, the importance of issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. [VFI and VFP] further object[] to this Request on the grounds that it seeks production of documents containing information duplicated in QP's other Requests for Production. [VFI and VFP] further object[] on the grounds that QP has now served a total of 111 Requests for Production on Defendants in this litigation, which have subjected Defendants, including [VFI and VFP], to oppression, harassment, and undue burden. [VFI and VFP] further object[] to this Request to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, spousal privilege, marital privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, [VFI and VFP] answer[] as follows: [VFI and VFP are] available to meet and confer with Plaintiff regarding a reasonable and relevant scope for this Request.

The cost of goods sold ("COGS") transaction reports will reflect the cost of making Defendants' infringing products, including labor, materials, and the manufacturing process. Pilgrim Decl. ¶ 11. As part of the damages phase, Defendant has the burden to establish that certain deductions for overhead and expenses should be made from Plaintiff's calculation of Defendants' profits. In order to assess any such defense and to provide its own analysis, Plaintiff's expert must be permitted to analyze the COGS transaction reports.

The sales by customer detail reports are important to categorize Defendants sales in this matter for the purposes of determining damages. Again, Defendants have asserted that some sales to Canada may be captured in the accounting, and the particularized information in these reports will allow Plaintiff's expert to exclude any non-infringing revenue from the damages calculation. Further, the current accounts receivable aging reports are relevant because they provide further information regarding revenues that were derived by Defendants and marked as assets on their audited financial statements. In particular, the reports detail unpaid customer invoices and invoice

aging periods. Pilgrim Decl. ¶ 12. To the extent that Defendants argue at trial that Plaintiff's damages should be reduced because certain outstanding invoices were unlikely to be paid, the information contained in the current accounts receivable aging reports will be central to rebutting this argument.

*Audited Financial Statements for VFI and VFP*

RFP SET ONE NO. 51 TO VFI AND NO. 17 TO VFP: All audited financial statements from January 1, 2016 to the present.

RESPONSE: In addition to and without waiving the foregoing General Objections, [VFI and VFP] further object[] on the grounds that this Request is overly broad in scope in that this Request seeks information about all of [VFI and VFP]'s finances, and is in no way limited to records or information relevant to this litigation. [VFI and VFP] further object[] to this Request on the grounds that the burden and expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the parties' resources, the importance of issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. [VFI and VFP] further object[] to this Request on the grounds that it seeks production of documents containing information duplicated in QP's other Requests for Production. [VFI and VFP] further object[] on the grounds that QP has now served a total of 111 Requests for Production on Defendants in this litigation, which have subjected Defendants, including [VFI and VFP], to oppression, harassment, and undue burden. [VFI and VFP] further object[] to this Request to the extent it seeks information protected from discovery by the attorney-client privilege, the attorney work product doctrine, spousal privilege, marital privilege, or any other applicable privilege or immunity.

Subject to and without waiving the foregoing objections, [VFI and VFP] answer[] as follows: [VFI and VFP are] available to meet and confer with Plaintiff regarding a reasonable and relevant scope for this Request.

In his deposition, Matta testified that VFI's QuickBooks records are audited every year by a third-party accounting firm that also prepared audited financial statements for VFI. Munar Decl. ¶ 7, Exhibit D (p. 233:14-234:25). Defendants claim that the audited financials are unnecessary to

calculate damages, because Defendants have produced certain summary reports that they claim are enough to determine its revenues. In seeking to limit Plaintiff's access to this information, Defendants are substituting their judgment for that of Plaintiff's expert. These audited financials are necessary to confirm that the QuickBooks records produced by Defendants are accurate.

Further, the reports generated by the QuickBooks reports can be cross-checked against the amounts reported in Defendants' audited financial statements, which have been independently verified by a third party. This is significant because reconciliation between Defendants' internal financial reports and the audited financial statements will provide further proof at trial that Plaintiff's damages analysis is reasoned and should be credited. The audited financial statements are central to Plaintiff's damages analysis and should be produced.

## IV. CONCLUSION

Based on the foregoing, Quality Products' motion should be granted, and Defendants should be required to produce documents in response to Request for Production Nos. 47-51 to VFI and Nos. 13-17 to VFP within two weeks of the date of the Order.

Dated: January 18, 2019

        **CARNEY BADLEY SPELLMAN, P.S.**
        **Attorneys for Plaintiff**
        **Quality Products, Inc.**

By     */s/ Ashley K. Long*
    **Ashley K. Long/ WA Bar No. 45738**
    701 Fifth Avenue, Suite 3600
    Seattle, Washington 98104
    Telephone: (206) 622-8020
    Facsimile: (206) 467-8215
    Email: long@carneylaw.com

**THOITS LAW**
**Attorneys for Plaintiff**
**Quality Products, Inc.**

By     */s/ Misasha S. Graham*
**Andrew P. Holland/CA Bar No. 224737**
*(*Admitted *Pro hac vice)*
**Misasha S. Graham/CA Bar No. 237187**
*(*Admitted *Pro hac vice)*
**J. Drei Munar/CA Bar No. 320820**
*(*Admitted *Pro hac vice)*
A Professional Corporation
400 Main Street, Suite 250
Los Altos, California 94022
Telephone: (650) 327-4200
Facsimile: (650) 325-5572
Email:     aholland@thoits.com
        mgraham@thoits.com
        jmunar@thoits.com